CCC:JAM/MEM
F. # 2017R00509

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION FOR A SEARCH WARRANT FOR THE PERSON KNOWN AND DESCRIBED AS RONALD WASHINGTON, INMATE NUMBER 68635-053. | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT<br><br>(Fed. R. Crim. P. 41; T. 18, U.S.C., § 2119)<br><br>**21-MJ-707** |

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

       JUSTIN QUINN, being duly sworn, deposes and states that he is a Special Agent assigned to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") duly appointed according to law and acting as such.

       1.     Upon information and belief, there is probable cause to believe that evidence of violations of Title 21, United States Code, Section 848(e)(1)(A), murder while engaged in narcotics trafficking, and Title 18, United States Code, Sections 924(j)(1), firearm-related murder – specifically, that: Karl Jordan, Jr. and Ronald Washington, Inmate No. 68635-053 (collectively, "the defendants") together with others, while engaged in an offense punishable under Section 841(b)(1)(A) of Title 21, United States Code, to wit: a conspiracy to distribute five kilograms or more of a mixture or substance containing cocaine, a Schedule II controlled substance, did knowingly and intentionally kill and counsel, command, induce and cause the intentional killing of an individual, to wit: Jason Mizell, also known as "Jam Master Jay," and such killing did result by means of a firearm – will be

obtained by the taking, and preserving as evidence, of a buccal swab sample or blood sample from defendant Washington.[1]

2. On or about November 30, 2020, the Honorable Cheryl L. Pollack, Magistrate Judge for the Eastern District of New York, authorized search warrants to collect a buccal swab samples or blood samples from the defendant, docket number 20-MJ-1145. The affidavit and warrants are attached herein as Exhibit A. Both defendants were housed at the Metropolitan Detention Center ("MDC") at the time the warrant was issued. The warrant was executed with respect to defendant Jordan in the presence of counsel. However, due to COVID-19 limitations at the MDC, law enforcement was unable to execute the warrant with respect to defendant Washington within the period delineated by the warrant. Accordingly, the instant application seeks re-authorization to collect a buccal swab or blood sample from defendant Washington. Counsel for defendant Washington is aware of the instant application and has agreed to be present on June 25, 2021, so that Washington can be produced and provide a buccal swab should the Court grant the instant application.

The source for your deponent's information and the grounds for his belief are as follows:[2]

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

[2] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, I have not set forth all of the facts and circumstances relevant to this investigation.

3. I am a special agent assigned to work with the ATF, and have been for more than thirteen years. During my tenure with the ATF, I have investigated various federal criminal violations including narcotics trafficking, use of firearms in connection with narcotics trafficking and crimes of violence. During the course of those investigations, I have conducted physical surveillance, monitored undercover operations, debriefed cooperating witnesses and confidential informants, conducted controlled narcotics purchases and interviewed civilian witnesses. The information set forth below is based upon my experience and training as a special agent, my review of documents and other evidentiary items, debriefing of cooperating witnesses, and my discussions with other law enforcement agents. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

4. The U.S. Attorney's Office ("USAO"), along with detectives from the New York City Police Department ("NYPD") and special agents with the ATF have been conducting an investigation of the defendants Karl Jordan, Jr. and Ronald Washington relating to narcotics trafficking and the October 30, 2002 murder of Jason Mizell, also known as "Jam Master Jay," which occurred in Queens County (the "investigation"). At present, the investigation is ongoing and is currently seeking evidence regarding other possible co-conspirators, persons of interest and related crimes, including narcotics trafficking and witness intimidation by Jordan, Washington and others.

5. The investigation has revealed that, in addition to his music career, in or about and between 1996 and 2002, Mizell was involved in transporting kilogram-quantities of cocaine for retail sale in the Eastern District of New York and elsewhere. In or about July 2002, Mizell acquired approximately ten kilograms of cocaine on consignment from a supplier

3

in the Midwest. The cocaine was to be distributed in Maryland by Washington, Jordan and other co-conspirators. A dispute between Washington and one of the co-conspirators resulted in Mizell telling Washington that he would be cut out of the Maryland transaction. Following Washington's dispute with Mizell, Washington and Jordan conspired to murder Mizell.

6.   On Wednesday, October 30, 2002, Mizell and several others were present at his recording studio, 24/7 Studio, located on Merrick Boulevard in Queens, New York. At approximately 7:30 p.m., Washington and Jordan, armed with firearms, entered the studio. Each brandished a firearm. Washington pointed his firearm at one of the individuals located inside the studio ("Eyewitness 1") and demanded that the person lay on the floor. Jordan approached Mizell, pointed his firearm at him, and fired two shots at close range. One of those shots struck Mizell in the head, killing him. The second shot struck another individual in the leg ("Eyewitness 2").

7.   Both Eyewitness 1 and Eyewitness 2 were interviewed by law enforcement shortly after the murder. In that initial interview, Eyewitness 2 provided a description of the shooter that included, inter alia, a dark-colored "ski cap." Eyewitness 2 claimed to be unable to identify either of the perpetrators. Similarly, in the initial interview of Eyewitness 1, Eyewitness 1 provided a description of the shooter that included, inter alia, a "black ski mask." Eyewitness 1 claimed that to be unable to identify either of the perpetrators.

8.   In subsequent interviews and communications with law enforcement, both Eyewitness 1 and Eyewitness 2 have recanted their initial statements. Specifically, Eyewitness 1 has identified Ronald Washington as the individual who pointed a gun at Eyewitness 1 and demanded that Eyewitness 1 lay on the floor. Eyewitness 1 maintains an inability to identify the shooter, while conceding that the shooter was not wearing a "black ski

4

mask" and not recalling whether the shooter was wearing a hat.[3] Eyewitness 2 has since identified Karl Jordan, Jr. as the shooter and Ronald Washington as the second armed perpetrator, stating that Eyewitness 2 feared coming forward with the truth earlier because Karl Jordan, Jr. and others had threatened Eyewitness 2 and a member of Eyewitness 2's family.

9. Washington has made various admissions – both to law enforcement and third parties – that corroborate his involvement in both the murder and the underlying narcotics conspiracy. Specifically, Washington has repeatedly stated that he was inside of the studio at various points on October 30, 2002.

10. On August 14, 2020, a grand jury sitting in the Eastern District of New York returned an indictment (the "Indictment"), 20-CR-305 (LDH), charging Karl Jordan, Jr. and Ronald Washington with one count of murder while engaged in narcotics trafficking, in violation of Title 21, United States Code, Section 848(e)(1)(A), and one count of firearm-related murder, in violation of Title 18, United States Code, Sections 924(j)(1), for the October 30, 2002 murder of Mizell. Jordan is also charged with one count of conspiracy to distribute cocaine and seven counts of cocaine distribution, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), respectively.

11. A blue knit hat was recovered by law enforcement from inside the studio near Mizell's body and was submitted for forensic testing. As referenced in the certified file from the Office of the Chief Medical Examiner ("OCME File"),[4] a mixture of DNA from

---

[3] Notably, Eyewitness 1 noticed that the shooter had a neck tattoo. Karl Jordan, Jr. has a neck tattoo on the right side of his neck. Additionally, Eyewitness 1 has told third parties that Karl Jordan, Jr. was the shooter.

[4] The OCME reports have been disclosed to both defendants as part of the government's Rule 16 discovery production and marked "sensitive" under the terms of a protective order.

multiple individual contributors was detected. A search of the New York State DNA Index System Subject Index resulted in an association between the mixture from the blue hat and an individual named Morgan "Jay" Bryant, also known as Jason Robinson.[5] The government attempted to interview Mr. Bryant and was informed by his counsel, David E. Levine, Esq., that he would refuse to answer questions and would invoke his Fifth Amendment privilege against self-incrimination if called to testify before the grand jury. On or about February 6, 2020, Mr. Bryant was subpoenaed to testify before the grand jury and, while acknowledging that he had never been inside of the studio and had never met Mizell, invoked his Fifth Amendment right against self-incrimination with respect to any questions about the murder or the presence of the blue knit hat at the murder scene.[6]

        12.     I am informed that the mixture on the blue knit hit is suitable for comparison with other samples of DNA. The government has been further advised that the OCME requires a DNA sample obtained directly from each defendant (e.g., a buccal swab) in order to obtain the DNA necessary to perform a complete analysis of whether either defendant was a contributor to the mixture found in the blue knit hat.

        13.     Based on the above information, there is probable cause to believe that defendant Washington may be a contributor to the DNA mixture recovered from the blue knit hat present at the crime scene. Therefore, there is probable cause to believe that

---

[5] Documents regarding the DNA have been disclosed to both defendants as part of the government's Rule 16 discovery production and marked "sensitive" under the terms of a protective order.

[6] A transcript of Mr. Bryant's has been provided to both defendants and marked "sensitive" under the terms of a protective order.

a buccal swab or sample of Washington's blood would constitute evidence of the defendant having committed the offenses charged in the Indictment.

   14. As stated previously, a warrant seeking this authorization was previously granted, docket number 20-MJ-1145, but could not be timely executed as to defendant Washington due to COVID-19 restrictions in place at the MDC. Accordingly, the instant application only seeks re-authorization to collect a buccal swab or blood sample from defendant Washington. Counsel for defendant Washington is aware of the instant application and has agreed to be present on June 25, 2021, so that Washington can be produced and provide a buccal swab.

   15. WHEREFORE, your deponent requests that a search warrant be issued authorizing ATF Special Agents, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from the defendants, Karl Jordan, Jr. and Ronald Washington, a buccal swab sample or sample of blood from each .[7] An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples are requested for each defendant in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to the OCME for examination and will be subject to

---

[7] The defendants are currently incarcerated in the Metropolitan Detention Center. The government intends to produce the defendants to the Courthouse, located in Brooklyn, New York, in order to execute the searches.

examination, testing and analysis.  A blood sample will only be sought from a defendant in the event that the defendant refuses to submit to a buccal cheek swab.  In the event that a blood sample is taken, a licensed doctor, nurse or other qualified medical practitioner will take the sample.

16. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. While the defendants are both incarcerated and aware of the Indictment, as explained above, the criminal investigation into the charged offense and related offense is ongoing, and these documents discuss aspects of that investigation that are neither public nor known to all of the targets of the investigation. While the defendants will be aware of the investigation upon execution of the warrant, others, known and unknown, with whom they are potentially in contact with may not be aware of the nature and scope of the government's investigation, or that it is even ongoing following the defendants' arrest. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

JUSTIN QUINN
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this
17TH day of June, 2021

THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

9